**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| ADRIENNE TUCKER, *et ux.*, | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | Case No.: PWG-14-813 |
| | * | |
| SPECIALIZED LOAN SERVICING, LLC, | | |
| *et al.*, | * | |
| | | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs Adrienne Tucker and Maurice Holmes are facing foreclosure on their home. They failed to make payments under their original mortgage loan after they began making payments under what they believed to be a valid loan modification agreement. They filed suit in the Circuit Court for Prince George's County against their current loan servicer, Defendant Specialized Loan Servicing, LLC ("SLS"); their previous loan servicer, Defendant Saxon Mortgage Services, Inc. ("Saxon"); and the owner of their current mortgage loan, Defendant FV-I, Inc., in trust for Morgan Stanley Capital Holdings LLC ("FVI"). ECF No. 2. Plaintiffs seek declaratory relief and damages under various theories of liability, all based on their assertion that Defendants proceeded as if the original terms of the loan, and not the purported modification agreement, controlled. *See id.*; Am. Compl., ECF No. 22. Defendants removed the case to this Court, ECF No. 1, and have moved to dismiss for failure to state a claim. ECF Nos. 23 & 25. Also, Plaintiffs, having amended once in response to Defendants' earlier motions to dismiss, now seek leave to file a second amended complaint, ECF No. 32. The parties have briefed these

motions fully.  *See* ECF Nos. 23-1, 25, 29–31, 33–37.  Yet, prior to ruling on them, I must determine whether this Court has jurisdiction over any or all of Plaintiffs' claims, given the pending foreclosure proceeding in state court.[1]  Because this Court lacks jurisdiction over Plaintiffs' declaratory judgment count, it must be dismissed.   I also will dismiss Plaintiffs' claims for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA") and their breach of contract claim against Saxon, as Plaintiffs have abandoned these claims.  For the reasons that follow, the remainder of Plaintiffs' claims will proceed.

## I.    BACKGROUND[2]

Adrienne Tucker purchased 13901 Edsall Street, Upper Marlboro, Maryland (the "Property") through a mortgage loan and then jointly executed a Deed of Trust with her husband, Maurice Holmes, as co-owner of the Property.  Second Am. Compl. ¶¶ 17, 19, ECF No. 32-2. The Deed of Trust provided that the lender and Ms. Tucker could modify the mortgage loan without Mr. Holmes's approval.  *Id.* ¶ 21.  Ms. Tucker applied to GMAC Mortgage ("GMAC"),[3] which serviced the mortgage at the time, for a permanent loan modification, and she received a signed copy of the modification agreement from GMAC, stating that the modification agreement

---

[1] The Maryland Judiciary Case Search website, the contents of which I judicially notice, Fed. R. Civ. P. 201, 803(8)(a)(i), 901(b)(5), establishes that the foreclosure action with regard to the Plaintiffs' Property still is pending in the Circuit Court for Prince George's County.

[2] For purposes of considering Defendants' Motions to Dismiss, I accept as true the facts that Plaintiffs alleged in the Amended Complaint, which is the operative complaint, as well as in their proposed Second Amended Complaint, ECF No. 32-2, as I am simultaneously considering the merits of Plaintiffs' request for leave to amend. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

[3] Plaintiffs originally named GMAC as a Defendant but voluntarily dismissed their claims against GMAC and amended their complaint to omit GMAC as a Defendant.  *See* ECF Nos. 18 & 22.

was effective as of February 1, 2010. *Id.* ¶¶ 10, 22–26.  Ms. Tucker made, and GMAC accepted, payments under the modification agreement. *Id.* ¶ 28.  Thereafter, the loan was assigned to Defendant Saxon and then Defendant SLS for servicing, and although Ms. Tucker continued making payments under the purported modification agreement, neither servicer acknowledged the agreement or accepted her payments.  *Id.* ¶¶ 31–36.  The new servicers insisted that the modification agreement did not supplant the original terms of the loan. *Id.* ¶¶ 33, 36. Consequently, Carrie M. Ward, Howard Bierman, and Jacob Geesing, who "were appointed by SLS to serve as Substitute Trustees under the deed of trust dated November 22, 2005 to initiate foreclosure proceedings against Ms. Tucker and Mr. Holmes," filed a foreclosure action in the Circuit Court for Prince George's County with regard to the Property.  *Id.* ¶¶ 13, 40–41; State Ct. Docket.

In response, Plaintiffs filed this action against Defendants SLS and Saxon, as well as FVI, in state court. Compl., ECF No. 2.  Their Amended Complaint includes eight causes of action.  Plaintiffs claim that Defendants SLS and FVI violated the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201 *et seq.* ("MCDCA"); the FDCPA; and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 *et seq.* ("MCPA"). They allege that all Defendants violated the FCRA and are liable for defamation, injurious falsehood, and breach of contract.  In addition, they seek declaratory relief as to all Defendants. Specifically, they request that the Court declare that the modification agreement "modified and supplanted" the original mortgage loan and that the original mortgage loan "is of no force or effect"; that GMAC "by its actions, conduct and/or silence waived any provision or requirement in the Modification Agreement that both Plaintiffs execute the agreement as a prerequisite to its being effective; that Defendants "have unclean hands" in reporting Plaintiffs "delinquent and/or

3

in default in the payment of the Original Note" and in moving forward with foreclosure proceedings; that Defendants "have no rights, legal or otherwise, to foreclose on [Plaintiffs'] property based on any alleged delinquency or default under the terms of the Original Note"; and that Plaintiffs' property is not subject to foreclosure sale. *Id.* at 32–33. They also seek an injunction to stop Defendants from reporting to credit reporting agencies that they are in default on their original loan, as well as an injunction to prevent Defendants from enforcing the original loan. *Id.* at 33.

## II.   JURISDICTION[4]

Under the Anti-Injunction Act, 22 U.S.C. § 2283, this Court may not grant "an injunction to stay the proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Significantly, "where the Anti–Injunction Act bars an injunction it 'also bars the issuance of a declaratory judgment that would have the same effect as an injunction.'" *Lovett v. Deutsche Bank Nat'l Trust Co.*, No. 12-1816-MBS-SVH, 2013 WL 841679, at *6 (D.S.C. Feb. 12, 2013) (quoting *Denny's, Inc. v. Cake*, 364 F.3d 521, 528 (4th Cir. 2004) (internal quotation marks and citations omitted)), *report & recommendation adopted*, 2013 WL 814675 (D.S.C.

---

[4] Because the Anti-Injunction Act, 22 U.S.C. § 2283, "deprives the court of subject matter jurisdiction," *Kinard v. Kinard*, No. 98-2511-24, 1999 WL 501008, at *2 (D.S.C. June 4, 1999), I must consider the issue *sua sponte*, *see Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) ("The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties."); *see also Potoczny v. Aurora Loan Servs., LLC*, ---- F. Supp. 2d ----, 2014 WL 3600475, at *5 (E.D. Pa. July 22, 2014) (addressing Anti-Injunction Act *sua sponte*); *Bess v. Spitzer*, 459 F. Supp. 2d 191, 206 (E.D.N.Y. 2006) (same). Likewise, the Court must dismiss any claim over which another court has prior exclusive jurisdiction. *See Westfeldt v. N.C. Min. Co.*, 166 F. 706, 710 (4th Cir. 1909) (stating that case law regarding prior exclusive jurisdiction "does not rest simply on comity, but on necessity" and that "'[i]t leaves nothing to discretion'") (quoting *Covell v. Heymen*, 111 U.S. 176, 182 (1884)).

Mar. 6, 2013).  This is because "'even if a declaratory judgment is not used as a basis for actually issuing an injunction, declaratory relief alone has virtually the same practical impact as a formal injunction would.'" *Id.* (quoting *Samuels v. Mackell,* 401 U.S. 66, 73 (1971)).  For example, if a plaintiff requests "a declaration that the [plaintiff's] mortgage and note are unenforceable," the request "preempts the foreclosure and has 'the same effect' as [a] request for an injunction to prevent foreclosure; both 'result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid.'"  *Id.* (quoting *Samuels,* 401 U.S. at 72).  Because this is precisely the relief that Plaintiffs seek in their last count, in which they request a declaration that their "property is not subject to foreclosure sale because of any alleged default by Plaintiffs in the payment of the Original Note," and an injunction to prevent Defendants from enforcing the original loan, Second Am. Compl. 33, this Court cannot grant their request for a declaratory judgment.  *See Lovett*, 2013 WL 841679, at *6; *Hayes v. JP Morgan Chase Bank*, No. 13-1884-JFA, 2014 WL 4198897, at *5 (D.S.C. Aug. 20, 2014) (recognizing that Anti-Injunction Act prohibited federal court from staying state court foreclosure action or declaring mortgage unenforceable, which would have the same effect); *Graves v. One West Bank, FSB*, No. DKC-13-3343, 2014 WL 994366, at *1 (D. Md. Mar. 13, 2014) (noting previous dismissal of claim for injunctive relief under the Anti-Injunction Act); *Glasgow, Inc. v. Noetzel*, 556 F. Supp. 595 (D. W. Va. 1983) (dismissing claim for declaratory relief, relying in part on Anti-Injunction Act).

Moreover, when a party seeks equitable relief concerning property that already is the *res* (the subject) of an ongoing *in rem* action in another court, it is well-settled that the court controlling the property for purposes of the earlier-filed suit has jurisdiction over the property, and the court in which the later equity action was filed lacks jurisdiction.  *See Princess Lida of*

*Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939); *United States v. Bank of N.Y. & Trust Co.*, 296 U.S. 463, 477 (1936); *Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189 (1935); *Palmer v. Texas*, 212 U.S. 118, 129 (1909); *Farmers' Loan & Trust Co. v. Lake Street Elevated R.R.*, 177 U.S. 51, 61 (1900); *see also Sexton v. NDEX West, LLC*, 713 F.3d 533, 537 (9th Cir. 2013) ("The doctrine of prior exclusive jurisdiction applies to a federal court's jurisdiction over property only if a state court has previously exercised jurisdiction over that same property and retains that jurisdiction in a separate, concurrent proceeding."). Simply put, "the jurisdiction of the one court must yield to that of the other." *Princess Lida*, 305 U.S. at 466; *see Penn Gen. Cas. Co.*, 294 U.S. at 195. This principle, referred to in some courts as the prior exclusive jurisdiction doctrine, *e.g.*, *Sexton*, 713 F.3d at 537, applies to suits *in rem* and *quasi in rem*[5] in state or federal court, provided that "the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought." *Princess Lida*, 305 U.S. at 466; *see Penn Gen. Cas. Co.*, 294 U.S. at 195.

> [It] is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property."

*Princess Lida*, 305 U.S. at 466*.* The doctrine is intended "[t]o avoid unseemly and disastrous conflicts in the administration of [the United States'] dual judicial system, and to protect the

---

[5] In contrast, in an *in personam* action for money damages or

> for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as res adjudicata in the other.

*Penn Gen. Cas. Co.*, 294 U.S. at 195.

judicial processes of the court first assuming jurisdiction." *Penn Gen. Cas. Co.*, 294 U.S. at 195 (internal citations omitted).

Here, the previously filed, ongoing foreclosure proceeding in Maryland state court is an *in rem* proceeding. *See Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 644 (4th Cir. 2011). And, while Plaintiffs seek monetary damages in all but one of their claims, they seek equitable relief in the form of a declaratory judgment and injunctions in their last count. Thus, were the Anti-Injunction Act not a bar to that count, the prior exclusive jurisdiction doctrine would mandate its dismissal. *See Princess Lida*, 305 U.S. at 466. Therefore, Plaintiffs' declaratory judgment action must be dismissed. *See id.*; 28 U.S.C. §§ 2283; *Lovett*, 2013 WL 841679, at *6.

## III.   THE *YOUNGER* ABSTENTION DOCTRINE[6]

This Court has federal question and diversity jurisdiction over Plaintiffs' claims for damages, *see* 28 U.S.C. §§ 1331, 1332(a)(1); Notice of Removal ¶¶ 4–7, and "[t]he Supreme Court has repeatedly instructed that 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996), and citing, *e.g.*, *Deakins v. Monaghan,* 484 U.S. 193, 203 (1988), in which the Supreme Court referred to the federal courts' obligation to exercise jurisdiction as "virtually unflagging"; *England v. La. State Bd. of Med. Exam'rs,* 375 U.S. 411, 415 (1964), in which the Court said that it is a federal court's "duty" to exercise its jurisdiction; *Willcox v. Consol. Gas Co.,* 212 U.S. 19, 40 (1909) (same); *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404 (1821), in which the Court said that it "ha[d] no more right

---

[6] District courts may raise the issue of abstention *sua sponte*. *See D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1231 (10th Cir. 2013) ("a court may raise the issue of abstention *sua sponte*"); *Fiallo v. PNC Bank, N.A.*, No. PWG-14-1857, 2014 WL 6983690, at *2 n.1 (D. Md. Dec. 9, 2014) (discussing *Younger* abstention).

to decline the exercise of jurisdiction which is given, than to usurp that which is not given")).

Indeed, "[d]espite what may appear to result in a duplication of judicial resources, the rule is well

recognized that the pendency of an action in the state court is no bar to proceedings concerning

the same matter in the Federal court having jurisdiction." *Ackerman v. ExxonMobil Corp.*, 734

F.3d 237, 248 (4th Cir. 2013) (quoting *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934 (4th

Cir. 1992) (internal quotation marks and alteration omitted)).

Yet, "it has long been established that a federal court has the authority to decline to

exercise its jurisdiction when it is asked to employ its historic powers as a court of equity," and

may exercise this authority in "all cases in which the court has discretion to grant or deny relief."

*Quackenbush*, 517 U.S. at 717, 718 (citations and quotation marks omitted).   For example,

related, ongoing state court proceedings might make abstention appropriate or even necessary.

*See Ackerman*, 734 F.3d at 248.   Nonetheless, as the Fourth Circuit has explained, *id.*:

> Abstention doctrines constitute "extraordinary and narrow exception[s]" to
> a federal court's duty to exercise the jurisdiction conferred on it. *Quackenbush,*
> 517 U.S. at 716, 728 (internal quotation marks omitted). These exceptions require
> the denial of discretionary relief when "principles of federalism and comity"
> outweigh the federal interest in deciding a case. *See id.* at 716, 728. To cabin that
> discretion and ensure that abstention "remains the exception, not the rule," the
> Supreme Court has "carefully defined ... the areas in which such abstention is
> permissible." *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S.
> 350, 359 (1989) ( *NOPSI* ) (internal quotation marks omitted).

Federal circuit and district courts, including this Court, have relied upon the doctrine of

abstention articulated in *Younger v. Harris*, 401 U.S. 37 (1971), as a basis for the dismissal of

cases concerning real property interests when the property at issue is the subject of ongoing

foreclosure proceedings in state court.   *E.g.*, *Cunningham v. JP Morgan Chase Bank*, 537 F.

App'x 44, 45 (3d Cir. 2013); *Doscher v. Menifee Cir. Ct.*, 75 F. App'x 996, 997 (6th Cir. 2003);

*Graves v. One West Bank, FSB*, No. DKC-13-3343, 2014 WL 994366, at *2 (D. Md. Mar. 13,

2014); *see also Fiallo v. PNC Bank, N.A.*, No. PWG-14-1857, 2014 WL 6983690, at *2–3 (D.

Md. Dec. 9, 2014) (discussing *Younger* doctrine as alternative grounds for dismissal).  Like other

circuits, the Fourth Circuit has stated that the *Younger* abstention doctrine

> requires a federal court to abstain from interfering in state proceedings, even if
> jurisdiction exists, if there is: (1) an ongoing state judicial proceeding, instituted
> prior to any substantial progress in the federal proceeding; that (2) implicates
> important, substantial, or vital state interests; and (3) provides an adequate
> opportunity for the plaintiff to raise the federal constitutional claim advanced in
> the federal lawsuit.

*Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008); *cf., e.g., Cunningham*,

537 F. App'x at 45; *Doscher*, 75 F. App'x at 997; *31 Foster Children v. Bush*, 329 F.3d 1255,

1274 (11th Cir. 2003); *Brooks v. N.H. Supreme Ct.*, 80 F.3d 633, 637 (1st Cir. 1996).

Additionally, the Fourth Circuit and other circuits have held that "property law concerns, such as

land use and zoning questions, are frequently 'important' state interests justifying *Younger*

abstention."  *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 352 (4th Cir. 2005); *see,*

*e.g., Cunningham*, 537 F. App'x at 45 (affirming dismissal on *Younger* abstention grounds

because "the foreclosure action against Cunningham [was] ongoing in the Delaware Superior

Court, and this proceeding implicates important state interests"); *Doscher*, 75 F. App'x at 997

(affirming *Younger* abstention where "foreclosure action was pending in [state court], the

proceeding involved a matter of state interest, and Doscher had an adequate opportunity to raise

his challenges to the proceedings").

However, the recent Supreme Court case *Sprint Communications, Inc. v. Jacobs*, 134 S.

Ct. 584 (2013), casts doubt on the earlier circuit court analyses that led district courts to rely on

*Younger* to abstain from considering cases such as this one.  There, Sprint Communications, Inc.

("Sprint") had brought suit against the Iowa Utility Board in state and federal court, asking the

courts to declare that a federal act preempted the state utility board's decision regarding intrastate

access fees for certain phone calls.  134 S. Ct. at 589.  The federal district court dismissed the

suit, ruling that "*Younger* abstention was in order" because the issues before it and the state court

"implicat[ed] important state interests."  *Id*. at 590.  Reading *Middlesex County Ethics*

*Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982), "to require *Younger*

abstention whenever 'an ongoing state judicial proceeding ... implicates important state interests,

and ... the state proceedings provide adequate opportunity to raise [federal] challenges,'" the

Eighth Circuit agreed that the case should not proceed in federal court during the pendency of the

state litigation, but remanded it for the district court to enter a stay instead of dismissal.  *Id*.

(quoting *Sprint Comm'cns, Co., L.P. v. Jacobs*, 690 F.3d 864, 867 (8th Cir. 2012)).

On appeal, the Supreme Court sought to provide guidance on the limited scope of

*Younger*.  It stated that the three factors from *Middlesex* "were not dispositive; they were,

instead, *additional* factors appropriately considered by the federal court before invoking

*Younger*."  *Id.* at 593.  The court reasoned:

> Divorced from their quasi-criminal context, the three *Middlesex* conditions
> would extend *Younger* to virtually all parallel state and federal proceedings, at
> least where a party could identify a plausibly important state interest. *See* Tr. of
> Oral Arg. 35–36. That result is irreconcilable with our dominant instruction that,
> even in the presence of parallel state proceedings, abstention from the exercise of
> federal jurisdiction is the "exception, not the rule." *Hawaii Housing Authority v.*
> *Midkiff*, 467 U.S. 229, 236 (1984) (quoting *Colorado River,* 424 U.S., at 813).

*Id.*

The Supreme Court observed that it had "review[ed] and restate[d] [its] *Younger*

jurisprudence in *New Orleans Public Service, Inc. v.  Council of City of New Orleans*, 491 U.S.

350 (1989) ("*NOPSI*"), in which it "reaffirmed" that "'only exceptional circumstances justify a

federal court's refusal to decide a case in deference to the States.'"  *Sprint*, 134 S. Ct. at 591

(quoting *NOPSI*).  The *NOPSI* Court identified "three types of proceedings" in which "[t]hose

'exceptional circumstances' exist": (1) "ongoing state criminal prosecutions," (2) "certain 'civil enforcement proceedings,'" and (3) "pending 'civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions,'" and the *Sprint* Court held that those "'exceptional' categories . . . define *Younger's* scope." *Sprint*, 134 S. Ct. at 591 (quoting *NOPSI*, 491 U.S. at 368). With regard to the second category, the Supreme Court explained that its "decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects,'" and that "[s]uch enforcement actions are characteristically initiated to sanction the federal plaintiff." *Id.* at 592 (quoting *Huffman*, 420 U.S., at 604).

With regard to the scope of the third category, the *Sprint* Court noted that the *NOPSI* Court cited *Juidice v. Vail*, 430 U.S. 327 (1977), and *Pennzoil v. Texaco Inc.*, 481 U.S. 1 (1987). *Sprint*, 134 S. Ct. at 591. In *Juidice*, the Court held that, under *Younger*, the federal court should not interfere in state court proceedings "in which the State's contempt process is involved," because the contempt process "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory." 430 U.S. at 335–36 & n.12. In *Pennzoil*, the Court held that the federal courts should not interfere with state courts enforcing their own orders and judgments, reasoning that "[n]ot only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained." 481 U.S. at 13.

A few district courts have considered the applicability of *Younger* in the foreclosure context post-*Sprint*. In *Brumfiel v. U.S. Bank, N.A.*, No. 14-2453-WJM, 2014 WL 7005253 (D. Colo. Dec. 11, 2014), the plaintiff brought suit in federal court "to quiet title and for slander of title in relation to Defendant U.S. Bank's attempt to foreclose on [her] property," while the state

proceeding was ongoing.  *Id.* at *2.  The defendants moved to dismiss, and the court referred the motion to a magistrate judge for a report and recommendation.  *Id.*  The magistrate judge recommended dismissal under *Younger* or, alternatively, the *Colorado River* doctrine, because "the Foreclosure Proceeding involve[d] 'matters of state concern.'" *Id.* at *2–3.  Reviewing the recommendation after the plaintiff objected, the district court agreed that *Colorado River* applied, and on that basis it dismissed the case.  *Id.* at *4–5.  With regard to *Younger*, the court observed that the *Sprint* Court's "holding that the use of the 'important state interests' factor improperly broadened the scope of the abstention doctrine . . . significantly cabined the breadth of *Younger* abstention as it ha[d] been applied in th[e] [Eighth] Circuit." *Id.* at *3.  The court concluded that *Younger* did not apply because "neither of the first two categories applies to the Foreclosure Proceeding, and although it [was] not clear whether it involve[d] 'certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions,' neither party ha[d] provided any support for such a finding." *Id.* (quoting *Sprint*, 134 S. Ct. at 592).  Likewise, in *Carrier v. Bank of Am., N.A.*, Nos. 12–104 RMB/JS, 12–7702 RMB/JS, 12–7755 RMB/JS, 12–7701 RMB/JS, 12–7945 RMB/JS, 12–7946 RMB/JS, 12–7947 RMB/JS, 12–7949 RMB/JS, 12–7948 RMB/JS, 2014 WL 356219, at *9–10 (D.N.J. Jan. 31, 2014), the federal court relied on *Sprint* to deny the defendant's motion to dismiss, on *Younger* grounds, the claims by plaintiffs with pending foreclosure actions in state court.  The court noted that "[t]o rely on *Middlesex* in the instant matter would improperly divorce the *Middlesex* holding from its quasi-criminal context—a strategy rejected by the Supreme Court in *Sprint*." *Id.*

In *Lech v. Third Federal Savings & Loan Association of Cleveland*, No. 13-518, 2013 WL 6843062, at *1–2 (S.D. Ohio Dec. 27, 2013), in which the plaintiff sought only "damages for alleged violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq.*

('RESPA'), and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ('TILA')," the magistrate judge recommended against *Younger* abstention.   There, the defendant had filed the state foreclosure action after the federal civil action commenced, and the plaintiff asserted his RESPA and TILA claims as counterclaims in the state action.  *Id.* at \*1.  The judge reasoned that the case before her did not fall into any of the three categories identified in *Sprint* because the foreclosure case was not a criminal proceeding and did not resemble one, and "going forward in th[e] matter [would] not interfere with the Ohio court's ability to perform its judicial function."  *Id*. at \*2–3. The judge observed that "[c]ases falling into the third category often involve a state court's attempt to effectuate its orders" and "involve a federal plaintiff asking a federal court to enjoin a state proceeding," which the plaintiff did not seek to do in *Lech*.

Here, the ongoing state court proceeding certainly is neither a criminal proceeding nor akin to one; if anything, it mirrors contract litigation.   Yet, as noted, Plaintiffs' claim for declaratory relief is tantamount to a request for an injunction of the state court proceedings.  *See Samuels v. Mackell*, 401 U.S. 66, 72 (1971); *Denny's, Inc. v. Cake,* 364 F.3d 521, 528 (4th Cir. 2004). And, the state court has ordered that "the secured party may schedule the foreclosure sale, subject to the right of the borrower to file a motion pursuant to Rule 14-211 to stay the same and dismiss the action," denied Ms. Tucker and Mr. Holmes's motions to dismiss, to stay, or for a temporary restraining order, and ordered that "this case shall continue in due course." *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=CAEF1322298&loc=65& detailLoc=PGV.   Thus, Plaintiffs' declaratory judgment action may interfere with the state court's attempt to effect these orders. *Sprint*, 134 S. Ct. at 591; *NOPSI*, 491 U.S. at 368.   With regard to Plaintiffs' other claims, a finding that Defendants violated state or federal law, defamed Plaintiffs, breached their contracts, or reported false information in pursuing the foreclosure

action could interfere with the enforcement of a foreclosure order and "challenge the very process by which [the order was] obtained." *Pennzoil*, 481 U.S. at 13. Nonetheless, it is not clear that an order of foreclosure is "'uniquely in furtherance of the state court['s] ability to perform [its] judicial function[],'" or that these are the "'exceptional circumstances'" in which to exercise this discretion. *Sprint*, 134 S. Ct. at 591 (quoting *NOPSI*, 491 U.S. at 368). Further, the Court's discretion to decline to exercise jurisdiction by dismissing under *Younger* does not extend to Plaintiffs' causes of action for damages, which may be stayed but not dismissed on abstention grounds. *Quackenbush*, 517 U.S. at 721. And, with regard to the declaratory judgment action, as I already have determined that this Court lacks jurisdiction over the declaratory judgment action, I need not determine whether it could proceed on this count under the *Younger* abstention doctrine. Therefore, I will not stay Plaintiffs' claims for damages on *Younger* abstention grounds. *See Sprint*, 134 S. Ct. at 591; *NOPSI*, 491 U.S. at 368; *Brumfiel*, 2014 WL 7005253, at *3; *Carrier*, 2014 WL 356219, at *9–10; *Lech*, 2013 WL 6843062, at *1–2.

## IV.   STANDARDS OF REVIEW FOR PENDING MOTIONS

### A.  Motion to Amend

Whether to grant a motion for leave to amend is within this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). When, as here, a plaintiff moves to amend for a second time but before the Court issues a scheduling order establishing a deadline for doing so, Rule 15(a)(2) provides the standard for whether to grant the motion. *See id.*; Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "The Court only should deny leave to amend if amendment 'would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility.'" *Rao v. Alaska Airlines*, 22 F. Supp. 3d 529, 540 (D. Md. 2014) (quoting *MTB Servs., Inc. v. Tuckman-Barbee*

14

*Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013)); *see Foman*, 371 U.S. at 182 (stating that the court also may deny leave if the plaintiff has amended more than once already without curing the deficiencies in the complaint); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  Otherwise, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," and the plaintiff moves to amend, the Court should grant the motion so that the plaintiff has the "opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

Prejudice occurs when the amendment necessitates additional discovery and analysis to address events that previously were not part of the case, as opposed to when the amendment involves events that the "defendant was from the outset made fully aware of," such that "an allowance of the amendment could not in any way prejudice the preparation of defendant's case." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).  Determining whether amendment would be futile does not involve "'an evaluation of the underlying merits of the case.'" *MTB Servs.*, 2013 WL 1819944, at *3 (quoting *Next Generation Grp. v. Sylvan Learning Ctrs., LLC.*, No. CCB–11–0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012)).  Rather, "the merits of the litigation" are only relevant to the Court's ruling on a motion for leave to amend if "a proposed amendment may clearly be seen to be futile," *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), such as "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards," *Katyle v. Penn Nat. Gaming Inc.*, 637 F.3d 462, 471 (4th Cir. 2011); *see MTB Servs.*, 2013 WL 1819944, at *3.

### B.  Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237,

2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.  *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  The Court "may consider the complaint itself and any documents that are attached to it," as well as any "document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity."[7]  *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citations and quotation marks omitted).

A Rule 12(b)(6) motion "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred," except under "the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  To consider a statute

---

[7] Because I do not need to consider any documents outside this scope to rule on Defendant's motion, in which Wells Fargo seeks dismissal or, in the alternative, summary judgment, I will treat the motion as one to dismiss.  *See* Fed. R. Civ. P. 1; *CACI Int'l*, 566 F.3d at 154.

of limitations defense at the Rule 12(b)(6) stage, "all facts necessary to the affirmative defense [must] 'clearly appear[ ] *on the face of the complaint*.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis added)).   Then, if the allegations on the face of the complaint show that the affirmative defense would bar any recovery, the plaintiff fails to state a claim.  *Jones v. Bock*, 549 U.S. 199, 214–15 (2007).

## V.   DISCUSSION

### A.  Claims that the Parties Agree to Strike

In their Amended Complaint, Plaintiffs claim that Defendants SLS and FVI violated the FDCPA and that all Defendants violated the FCRA.  Defendants SLS and FVI argue that they are exempt from liability under the FDCPA because they do not fall within the FDCPA definition of debt collectors.  SLS/FVI Mem. 7–8.  Additionally, all Defendants contend that Plaintiffs fail to state a claim for a violation of the FCRA.  *Id.* at 13; Saxon Mem. 5–6.  Plaintiffs do not oppose dismissal of their FDCPA claim, and they concede that they have not alleged sufficient facts to state a claim under the FCRA.  Pls.' Opp'n to SLS/FVI Mot. 13; Pls.' Opp'n to Saxon Mot. 2–3.  Moreover, in their Second Amended Complaint, Plaintiffs eliminate these causes of action.  Similarly, in response to Saxon's argument that Plaintiffs' breach of contract claim against it is untimely and fails to state a claim, Saxon Mot. 2, Plaintiffs "concede to dismiss the seventh cause of action for breach of contract, <u>solely as to Defendant Saxon</u>."  Pls.' Opp'n to Saxon Mot. 12.  Also, in their Second Amended Complaint, Plaintiffs assert this cause of action against SLS and FVI only.

Although Defendants oppose Plaintiffs' Motion to Amend, ECF Nos. 34 & 35, I construe their Oppositions to apply to the counts for which Plaintiffs seek to augment their pleadings and not to the claims that Plaintiffs seek to delete, which Defendants do not address.  *See* Fed. R.

Civ. P. 1.  Therefore, to the extent that Plaintiffs seek to strike their claims for violations of the

FDCPA and the FCRA and their breach of contract claim as to Defendant Saxon, their Motion to

Amend is granted as unopposed.[8]  Consequently, Defendants' Motions to Dismiss are denied as

moot as to these claims.

### B.  Amendment of Other Claims

In support of their motion, Plaintiffs argue that amendment would not be prejudicial

because the Second Amended Complaint does not include any new causes of action, but rather

eliminates two of the causes of action, and the new facts presented in the Second Amended

Complaint "are based on the same operative events as pleaded in both the initial and first

amended complaint."  Pls.' Mem. 3.  Further, they assert that they "promptly sought leave to

amend" and "[a] scheduling order has not been entered, discovery has not commenced, and a

trial date has not been set."  *Id*. at 3–4.  They contend that amendment would not be futile

because their amended pleading is "sufficient to withstand a motion to dismiss."  *Id*. at 4.

Defendants oppose the motion, with SLS and FVI arguing that "Plaintiffs have already

had two opportunities to plead actionable claims and Defendant should not bear the burden of

Plaintiffs' continued failure to do so."  SLS/FVI Opp'n 1.  In their view, their previous motions

to dismiss, ECF Nos. 11 & 13, "pointed out plainly" deficiencies in Plaintiffs' complaint, such as

"the lack of a valid loan modification and the limitations issues," and "Plaintiffs' failure to

adequately plead their claims the first two times is not sufficient grounds for leave to amend yet

again."  SLS/FVI Opp'n 2. Saxon similarly argues that Plaintiffs' "pattern of trying to amend to

cure defects pointed out by motions to dismiss" is prejudicial, and it contends that amendment

---

[8] Although this amendment leaves this Court without federal question jurisdiction, the Court still
has diversity jurisdiction under 28 U.S.C. §§ 1332(a)(1).

would be futile because, even as amended, Plaintiffs fail to state any claim against Saxon.  Saxon

Opp'n 3–5.  None of the Defendants suggests that Plaintiffs acted in bad faith.

Plaintiffs filed their original Complaint on February 18, 2014, their Amended Complaint

as a matter of course on April 3, 2014, and the pending Motion for Leave to File Second

Amended Complaint on May 21, 2014, just over three months after this lawsuit commenced, and

less than two months after SLS and FVI filed their Motion to Dismiss Plaintiffs' Amended

Complaint.  I have not ruled on the pending Motions to Dismiss or entered a scheduling order in

this case, and consequently discovery has not begun.  The proposed amendments eliminate two

of Plaintiffs' existing causes of action, clarify the remainder, and do not involve any events that

Defendants were not cognizant of previously.  Given these circumstances, "an allowance of the

amendment could not in any way prejudice the preparation of defendant[s'] case."  *See Davis*,

615 F.2d at 613.

The determinations of whether amendment would be futile and whether to grant

Defendants' Motions to Dismiss involve the same considerations regarding the sufficiency of

Plaintiffs' pleadings.  *See Katyle*, 637 F.3d at 471 (stating that futility is matter of whether

proposed amended complaint fails to state a claim).  If Plaintiffs have stated a claim as to any

counts in their Second Amended Complaint, then amendment would not be futile, Plaintiffs'

Motion to Amend will be granted as to those counts, and Defendants' Motions to Dismiss will be

denied as to those counts.  Conversely, if Plaintiffs fail to state a claim for any counts in their

Second Amended Complaint, then amendment would be futile, Plaintiffs' Motion to Amend will

be denied as to those counts, and Defendants' Motion to Dismiss will be granted as to those

counts.  Therefore, I will consider whether amendment would be futile in tandem with my

analysis of Defendants' Motions to Dismiss.

### C.  Futility and Dismissal

#### 1.  *Validity of loan modification agreement*

The crux of Defendants SLS and FVI's Motion to Dismiss is that "[t]he document which the Plaintiffs hold out as a legally enforceable loan modification was expressly contingent on it being executed by **both** of the Plaintiffs," but "[o]nly Plaintiff Tucker signed the document," such that "there is no loan modification agreement," and "Plaintiffs' claims all fail, as they are wholly dependent on the purported modification . . . ."  SLS/FVI Mem. 1–2; *see id.* at 5–6. According to SLS and FVI, GMAC could have waived, in writing, the requirement that Mr. Holmes sign the modification agreement, but Plaintiffs do not allege as much in their Amended Complaint.  *Id.* at 5.  In their view, the Deed of Trust permitted Ms. Tucker to "agreed to modify the Subject Loan without the consent of Plaintiff Holmes," thereby making "it possible for the Modification to be made effective without the signature of Plaintiff Holmes, **if and only if** GMAC waived the requirement that he sign," but the Deed of Trust did not provide "a written waiver of the requirement that Plaintiff Holmes sign the modification."  *Id.* at 5–6. SLS and FVI insist that it is a matter of contract interpretation that the Court can determine at this stage. Defs.' Reply 2.

Plaintiffs counter that this argument "is misplaced at this stage of the proceedings, because a Rule 12(b)(6) motion is not to be used to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," unless it is clear from the fact of the complaint that a meritorious affirmative defense exists. Pls.' Opp'n to SLS/FVI Mot. 3.  They characterize Defendants' argument as "essentially an affirmative defense" that "can only be decided after a 'specific factual inquiry.'"  *Id.*  Additionally, Plaintiffs argue that their possession of the signed modification agreement is evidence that it is in effect.  *Id.* at 4.  They contend that

the non-waiver provision of the modification agreement was not a bar to the agreement becoming effective without Mr. Holmes's signature. *Id.* at 7–8 (citing *Hovnanian Land Inv. Grp. LLC v. Annapolis Towne Ctr. at Parole LLC*, 25 A.3d 967 (Md. 2011)).

Plaintiffs insist that "GMAC Mortgage waived the right to contest the formation of the Modification Agreement based on its conduct and silence in acquiescing to the loan modification knowing that only one of the Plaintiffs had signed the agreement." *Id.* at 5.  And, in their Second Amended Complaint, Plaintiffs allege that "GMAC Mortgage did not require both Plaintiffs to execute the Modification Agreement prior to accepting payments from Plaintiffs" and that GMAC's

> conduct, actions silence, and inaction in not requiring both Plaintiffs to execute the Modification Agreement prior to accepting payments from Plaintiffs and its acceptance of payments without qualification or protest . . . waived any condition that may have existed to the loan modification becoming effective, including but not limited to, any requirement that both Plaintiffs execute the Modification Agreement as a precondition to its being effective.

Second Am. Compl. ¶ 30.

Accepting Plaintiffs' Second Amended Complaint as true, Plaintiffs entered into an agreement that allowed for future modifications of their mortgage loan without Mr. Holmes's consent, and then Ms. Tucker, but not Mr. Holmes, signed a loan modification agreement that expressly required Mr. Holmes's signature.  Yet, the lender signed and returned the modification agreement to them and then proceeded to accept payments under the modification agreement.  Given that "a party may waive, by its actions or statements, a condition precedent in a contract, even when that contract has a non-waiver clause," *Hovnanian*, 25 A.3d at 983, Plaintiffs sufficiently have alleged the existence of the modification agreement for the Court to infer Defendants' liability and, consequently, for Plaintiffs' pleading to survive SLS and FVI's Motion to Dismiss on the ground that the modification agreement was not valid.  *See Iqbal*, 556 U.S. at

663.  Further, because Defendants SLS and FVI do not set forth any other grounds for dismissal of Plaintiffs' claims that SLS and FVI violated the MCDCA and the MCPA, *see* SLS/FVI Mem. 6–7, Defendants' Motion to Dismiss is denied as to these claims. *See* Fed. R. Civ. P. 12(b)(6). Additionally, because amendment would not be futile, Plaintiffs are granted leave to amend these two claims as proposed in their Second Amended Complaint.

2.  *Plaintiffs' claims that all Defendants are liable for defamation and injurious falsehood*

Defamation and injurious falsehood claims have a one-year statute of limitations in Maryland.  Md. Code Ann., Cts. & Jud. Proc. § 5-105 (stating limitations period for assault, libel and slander actions); *see Springer v. Erie Ins. Exchange*, 94 A.3d 75, 79 n.5 (Md. 2014) (noting that injurious falsehood is also known as disparagement or slander of title).  The limitations "period begins to run when the cause of action accrues," which, under the discovery rule, happens "when the plaintiff knew, or reasonably should have known of the wrong." *King v. Marriot Int'l, Inc.*, 195 F. Supp. 2d 720, 728 (D. Md. 2002) (citing *Pennwalt Corp. v. Nasios,* 550 A.2d 1155, 1165–66 (Md. 1988)).  Defendants SLS and FVI initially asserted that Plaintiffs' defamation and injurious falsehood claims were time-barred because Plaintiffs "were aware of the alleged credit reporting" no later than January 2012, but did not file suit until February 18, 2014.  SLS/FVI Mem. 15, 16.  Yet, Defendants misread Plaintiffs' Amended Complaint, which states that "*[a]fter* January 2012 Plaintiffs applied for credit, both personal and business, which applications have been denied because Defendants have reported that Plaintiffs have been delinquent and/or in default in the repayment of the Original Note."  Am. Compl. ¶ 39 (emphasis added).  Thus, it was not evident on the face of the complaint that these claims were time-barred.  Nonetheless, this non-specific allegation may not have sufficed, as a plaintiff claiming defamation "'may not baldly allege a broad course of conduct over a lengthy period of time and

later sue on any act that occurred during that time period,'" because "[e]very alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege." *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011) (quoting *English Boiler & Tube Inc. v. W.C. Rouse & Son, Inc.,* 172 F.3d 862 (table), 1999 WL 89125, at *3 (4th Cir. 1999)).

But, in the Second Amended Complaint, Plaintiffs allege that, "[b]ased on information received from Saxon and SLS, credit reporting agencies published that Plaintiffs were delinquent and/or in default in the repayment of the Original Note," and the agencies did so "monthly during the period February 2013 through February 2014." Second Am. Compl. ¶ 43. They also claim that "[i]n or about August 2012 and thereafter again in January 2013, Plaintiffs individually and jointly applied for loans and extensions of credit," which were denied. *Id.* ¶ 44. Significantly, they allege that, as a result, they "reviewed their credit reports in or about February 2013 and then again in August 2013" and "discovered at that time that it was being published on their respective credit reports that they were delinquent and/or in default in the repayment of the Original Note." *Id.* ¶ 45. Thus, it appears that they were denied credit in August 2012, before the alleged false reporting began, but did not suspect that something was amiss until after they were denied credit for a second time in January 2013, after which they promptly reviewed their credit reports within a month of the denial. On these facts, these causes of action accrued in February 2013, when Plaintiffs reviewed their credit report and knew and reasonably should have known of the alleged false reporting. *See King*, 195 F. Supp. 2d at 728. Certainly, Plaintiffs may have missed the statute of limitations regarding the first alleged reporting, if they received the credit report prior to February 18, 2013. If discovery reveals such information, Defendants may seek summary judgment on these claims with regard to the first report. But,

with regard to each monthly report thereafter, all of which Plaintiffs claim were false, Plaintiffs' claims are not time-barred on the face of the Second Amended Complaint. *See id.*; Cts. & Jud. Proc. § 5-105.

Saxon insists that the defamation and injurious falsehood claims both are preempted by the FCRA and that Plaintiffs did not allege malice sufficiently to avoid preemption. Saxon Mem. 6–8. The FCRA preempts consumer defamation claims "with respect to the reporting of information" that otherwise could be brought against "any person who furnishes information to a consumer reporting agency." 15 U.S.C. § 1681h(e). Yet, it carves out an exception for consumer defamation claims regarding "false information furnished with malice or willful intent to injure such consumer." *Id.*; *see Alston v. United Collections Bureau, Inc.*, No. DKC-13-0913, 2014 WL 859013, at *11 (D. Md. Mar. 4, 2014) (quoting 15 U.S.C. § 1681h(e) and noting that the "FCRA provides qualified immunity from state law claims unless [the] defendant acted with malice or willful intent to injure"; citing *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 597 (D. Md. 1999)). Here, as in *Alston*, "Section 1681h(e) is implicated" because Plaintiffs' defamation and injurious falsehood claims "involve[] 'the reporting of information,' and [are] brought against a 'person who furnished information to a consumer reporting agency,'" i.e., Saxon and SLS. *See Alston*, 2014 WL 859013, at *11.

Plaintiffs do not argue against FCRA preemption, but rather contend that they "have pleaded malice sufficiently to avoid FCRA preemption." Pls.' Opp'n to Saxon Mot. 3. A plaintiff pleads malice sufficiently "'to overcome the preemptive effect . . . of the FCRA'" when he or she alleges that a defendant "acted with reckless disregard for the truth or falsity of the information it was reporting," by alleging that the defendant "acted with a high degree of awareness of probable falsity or had serious doubts as to its veracity," not just "'a lack of

certainty.'" *Alston*, 2014 WL 859013, at *11 (quoting *Schelhaus v. Sears Holding Corp.,* No. 09-1145, 2009 WL 4728989, at *4 (D. Md. Dec. 3, 2009).

In *Alston*, Judge Chasanow dismissed the plaintiff's defamation claim because the operative complaint did not contain any "factual support for Plaintiff's conclusory averment that '[the defendant] intentionally and maliciously instructed the credit bureaus to report publicly that Plaintiff had a collection account' when it knew the reporting was false," and the pleading did not give any "indication that UCB knew the information it was allegedly reporting regarding Plaintiff's debt was false." *Id.* Here, Plaintiffs make similar conclusory allegations that "Saxon and SLS have reported knowingly false information to credit reporting agencies." Second Am. Compl. ¶ 79; *see id.* ¶ 93 (same). But, unlike in *Alston*, Plaintiffs then provide a strong basis for reasonably inferring that Defendant "acted with a high degree of awareness of probable falsity" of the credit information they were reporting. *See Alston*, 2014 WL 859013, at *11. Specifically, Plaintiffs claim that Defendants knew of the modification agreement and Plaintiffs' ongoing efforts to make payments under that agreement. Second Am. Compl. ¶¶ 80, 94 ("[SLS and Saxon were] aware that the Original Note had been modified and supplanted in 2010 by the Modification Agreement."); ¶¶ 84–85, 98–99 ("Plaintiffs had informed Saxon [and SLS] that they were in possession of a fully signed Modification Agreement and that GMAC Mortgage, which preceded each of the defendants as the servicer on the account, had accepted payments from Plaintiffs under the terms of the Modification Agreement. In addition, Saxon [and SLS were] aware that Plaintiffs were tendering payments to [them] under the terms of the Modification Agreement as opposed to the Original Note . . . ."). Therefore, Plaintiffs have pleaded malice sufficiently to survive Saxon's Motion to Dismiss these two claims on preemption grounds. *See* 15 U.S.C. § 1681h(e); *Alston*, 2014 WL 859013, at *11. Thus, with

regard to Plaintiffs' defamation and injurious falsehood claims, Plaintiffs' Motion to Amend is granted and Defendants' Motions to Dismiss are denied.

### 3.  *Plaintiffs' claim that SLS and FVI are liable for breach of contract*

It is undisputed that Maryland's three-year statute of limitations applies to Plaintiffs' breach of contract claim against SLS and FVI.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101; SLS/FVI Mem. 17; Pls.' Opp'n to SLS/FVI Mot. 23. Defendants SLS and FVI argue that the statute of limitations bars Plaintiffs' claim because "Plaintiffs had actual notice of [the] alleged breach" in July 2010, more than three years before they filed suit in February 2014.  SLS/FVI Mem. 17.  They base their assertion on the fact that "both Plaintiffs directly contacted Saxon to discuss [the alleged breach], and were told unequivocally in July 2010, that Saxon did not recognize the alleged loan modification and would not accept reduced payments."  *Id.*  Indeed, Plaintiffs claim:

> 31. In or about June 2010, Plaintiffs were advised by GMAC Mortgage that the mortgage loan account had been assigned to Saxon for servicing.
>
> 32. Based on the notice received from GMAC Mortgage, Plaintiffs thereafter attempted to make the loan payments as required by the Modification Agreement to Saxon. However, Saxon would not acknowledge the loan modification and would not accept payments based on the Modification Agreement. …
>
> 33. On July 10, 2010 and then again on July 20, 2010, Mr. Holmes contacted representatives of Saxon to ascertain the status of the loan account. He was advised that Saxon would not accept payments in the amount provided in the Modification Agreement and demanded that payment be made pursuant to the terms of the Original Note.

Second Am. Compl. ¶¶ 31–33.

Plaintiffs counter that the July 2010 date applies to Saxon, not to SLS and FVI.[9]   Pls.'

Opp'n to SLS/FVI Mot. 23.   As Plaintiffs see it, their claim against SLS and FVI did not accrue,

and therefore the limitations period did not begin to run, until "in or about January 2012," when

SLS, which had replaced Saxon as Plaintiffs' loan servicer, "refused to honor the terms of the

Modification Agreement."   Pls.' Opp'n to SLS/FVI Mot. 23–24.   SLS and FVI reply that they

cannot be liable for breaching the modification agreement unless they "succeed[ed] to the rights

and obligations of Saxon and GMAC under the alleged loan modification, . . . as they are not

named parties therein."   SLS/FVI Reply 5.   According to SLS and FVI, where a plaintiff asserts

a breach of contract claim against a party that succeeded an original party to the contract, the

limitations period accrues when "the original claim against the [original party] accrued."   *Id.*

Under Maryland law, "a cause of action for breach of contract generally accrues when the

contract is breached," but "may be extended … by the 'discovery rule,' which provides that the

limitations period does not begin until the plaintiff learned or should have learned of the breach."

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 465 (4th Cir. 2007) (citing *Jones v. Hyatt Ins. Agcy.,*

*Inc.*, 741 A.2d 1099, 1103–04 (Md. 1999); *Mayor & Council of Federalsburg v. Allied*

*Contractors, Inc.*, 338 A.2d 275, 280 (Md. 1975)).   Defendants are correct that, in *Goodman*, 494

F.3d at 464–66, the breach occurred when Tracer, a company that the defendant Praxair later

acquired, refused to pay wages under a contract with Goodman.   And here, the contract first was

breached in July 2010, when Saxon refused to accept payments and informed Mr. Holmes that it

would not accept payments, before SLS began servicing Plaintiffs' mortgage.   Second Am.

Compl. ¶¶ 33.   But, this case is distinct from *Goodman*, in which there was only one alleged

---

[9] Plaintiffs claim that FVI "is . . . liable for the acts of SLS, whose actions described [in the Second Amended Complaint] were on behalf of FV-I and/or completely within its delegated authority."   Second Am. Compl. ¶¶ 122.

breach—Tracer's failure to pay wages under that contract. *See Goodman*, 494 F.3d at 464–66. Here, the contract was breached again by SLS when SLS refused Plaintiffs' payments under the modification agreement, a breach that Plaintiffs discovered in January 2012. *See Ely v. Sci. Applications Int'l Corp.*, 716 F. Supp. 2d 403, 407 (D. Md. 2010) (noting that, on a claim that a defendant allegedly breached a contract by failing to make installment payments, the statute of limitations accrues for each failure to pay when the plaintiff knew or should have known about that specific breach). Moreover, each failure by Saxon or SLS to accept a payment from Plaintiffs is a breach of the contract. *See id.* Therefore, on the face of the Second Amended Complaint, SLS and FVI's breaches of the modification agreement accrued no earlier than January 2012, such that, on the face of the Second Amended Complaint, Plaintiffs' breach of contract claim against them is not time-barred. *See id.*; Cts. & Jud. Proc. § 5-101.

Alternatively, SLS and FVI contend that Plaintiffs fail to state a claim for breach of contract by failing to allege compensable damages. SLS/FVI Mem. 18. The elements of a claim for breach of contract include "contractual obligation, breach, and damages." *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011). As Defendants see it, Plaintiffs have not pleaded damages because Defendants' refusal to accept Plaintiffs' payments under the modification agreement left Plaintiffs in possession of the unaccepted payments. *Id.* Plaintiffs have amended their pleading to state that "[a]s a consequence of SLS's breach of the Modification Agreement, Plaintiffs are not able to realize the benefits of the reduced mortgage balance, the reduced interest rate, and the reduced monthly payments provided by the Modification Agreement," and they "hav[e] been denied credit" and have incurred "the increased cost for them to obtain credit." Second Am. Compl. ¶¶ 119–20. Additionally, they "have lost opportunities to seek to refinance

or obtain loans at terms better than those provided in the Original Note" and "[t]hey have lost income, business, and business opportunities." *Id.* ¶ 120.

Defendants oppose Plaintiffs' Motion to Amend on the ground that Plaintiffs already have amended their complaint and have not discovered any new evidence to justify another amendment, when Plaintiffs could have presented the facts originally as they now present them in the Second Amended Complaint.  SLS/FVI Opp'n to Mot. to Am. 3.  They do not address the merits of any of the amended claims, and they ask that, if the Court grants the Motion to Amend, the Court "consider [SLS and FVI's] pending motion to dismiss . . . in light of the proposed amendments and rule on same." *Id.*  Consequently, Defendants have not argued that Plaintiffs' breach of contract claim, as amended, fails to allege damages sufficiently.  Moreover, "damages which a plaintiff may recover for breach of contract include . . . [consequential damages, which are] those which may reasonably be supposed to have been in the contemplation of both parties at the time of making of the contract . . . ." *Addressograph–Multigraph Corp. v. Zink*, 329 A.2d 28, 34 (1974); *see Burson v. Simard*, 35 A.3d 1154, 1159 (Md. 2012) (quoting *Addressograph– Multigraph*).  It is reasonable to infer that, when they entered into the contract, the parties recognized that, if the contract were breached, Plaintiffs would incur the loss of the benefits of the contract (i.e., lower mortgage balance, payments, and interest rates) as a result.  Therefore, Plaintiffs sufficiently have pleaded damages from the alleged breach of contract in their Second Amended Complaint.  *See Kumar*, 17 A.3d at 749; *Addressograph–Multigraph*, 329 A.2d at 34.

## VI.    CONCLUSION

In sum, Defendants' Motions to Dismiss, ECF Nos. 23 & 25, ARE GRANTED IN PART AND DENIED IN PART, and Plaintiffs' Motion to Amend, ECF No. 32, IS GRANTED IN PART AND DENIED IN PART.  Specifically,

1. Defendants' Motions to Dismiss ARE GRANTED as to Plaintiffs' declaratory judgment action, and Plaintiffs' Motion to Amend IS DENIED as to that claim.

2. To the extent that Plaintiffs seek to strike their claims for violations of the FDCPA and the FCRA and their breach of contract claim as to Defendant Saxon, their Motion to Amend IS GRANTED as unopposed.  Defendants' Motions to Dismiss ARE DENIED as moot as to these claims.

3. SLS and FVI's Motion to Dismiss IS DENIED as to Plaintiffs' claims that SLS and FVI violated the MCDCA and MCPA and Plaintiffs' breach of contract claim against SLS and FVI. Plaintiffs' Motion to Amend IS GRANTED as to these claims.

4. Defendants' Motions to Dismiss ARE DENIED as to Plaintiffs' defamation and injurious falsehood claims.  Plaintiffs' Motion to Amend IS GRANTED as to these claims.

5. Plaintiffs' proposed Second Amended Complaint, ECF No. 32-2, IS ACCEPTED as the operative complaint in this case. The declaratory judgment action SHALL BE STRUCK, consistent with this Memorandum Opinion.  The remaining claims against SLS and FVI only are for violations of the MCDCA and MCPA and for breach of contract.  The remaining claims against all defendants are for defamation and injurious falsehood.

A separate order follows.


Dated: <u>February 3, 2015</u>                    <u>        /S/                </u>
                                                 Paul W. Grimm
                                                 United States District Judge

lyb